FILED
2012 JUN 19 PM 2: 16
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. _____ |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | A12CR 237 LY |
| v. | ) | [Violations: |
| | ) | 18 U.S.C. § 1344 – Bank Fraud; |
| RENE SANCHEZ, | ) | 18 U.S.C. § 2 - Aiding and Abetting.] |
| | ) | |
| Defendant. | ) | |

**THE GRAND JURY CHARGES:**

### INTRODUCTION

At various times material to this indictment:

Beginning in or about 2009 and 2010, RENE SANCHEZ (hereafter SANCHEZ) was employed by a car credit organization and a car dealership located in the Western District of Texas. Through his employment, SANCHEZ obtained the personal identifiers of customers who were purchasing automobiles and SANCHEZ later used these identifiers in his fraud scheme. In 2010, 2011, and 2012, SANCHEZ developed and executed a scheme to fraudulently obtain car loans. SANCHEZ, aided and abetted by others, facilitated the securing of car loans for borrowers which were illegally obtained from financial institutions due to the false information provided on the loan documents.

SANCHEZ developed various techniques to fraudulently obtain the loans, including falsifying the employment information of the listed loan applicant, inflating the income of the loan applicant, falsifying automobile insurance cards, placing false personal identifiers for the applicant on loan related documents, and by falsely representing himself to be the boyfriend or spouse of the loan applicant so that he could accompany the loan applicant to the closing of the loan to further

control the transaction. By providing inaccurate information, SANCHEZ made it falsely appear that the loan applicant was a better candidate for the loan. This tactic misled the financial institutions regarding the true financial situation of the borrower.

To facilitate the obtaining of auto loans, SANCHEZ would call financial institutions on the telephone and provide false information. SANCHEZ made multiple phone calls in 2011 and provided several different first and last names for himself, several different fictional employments, various false dates of birth, different addresses and other false information. Several of SANCHEZ's falsely created identities had no credit history under the identifiers provided by him and SANCHEZ volunteered to phone representatives that he could provide pay stubs, utility bills or other documents to verify his misrepresented identity's history. This allowed SANCHEZ to manufacture these forms for presentation to the financial institutions. SANCHEZ possessed templates for false Texas Driver's licenses and tax forms, and also presented falsified insurance cards and utility bills to create an enhanced financial history.

## COUNT ONE
## [18 U.S.C. §§ 1344 and 2]

The United States Attorney incorporates by reference the Introduction of this Indictment as though fully restated and realleged herein.

Beginning in or about 2009, and continuing until on or about February 22, 2012, in the Western District of Texas and elsewhere, the Defendant,

RENE SANCHEZ,

aided and abetted by other persons, did knowingly execute or attempt to execute a scheme or artifice (a) to defraud one or more financial institutions, including credit unions with deposits federally insured by the National Credit Union Administration, and/or banks with deposits federally insured by the Federal Deposit Insurance Corporation, to-wit: TruWest Credit Union, Velocity Credit Union, Randolph-Brooks Federal Credit Union, Capital One, University Federal Credit Union, and Chase Bank, and/or (b) to obtain moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of said financial institution(s), by means of false or fraudulent pretenses, representations or promises, contrary to Title 18, United States Code, Sections 1344 [Bank Fraud], and 2.

## and OVERT ACTS
*[handwritten: "and", "offense etc."]*

In furtherance of the ~~conspiracy~~ offense etc. and to effect the objects and purposes thereof, one or more of the following overt acts, among many others, were committed by or aided and abetted by SANCHEZ in the Western District of Texas and elsewhere:

1.   On or about October, 2009, SANCHEZ, while working at a car dealership, obtained the personal identifiers of "F.M." and kept them for future use in his fraudulent car loan applications.

2.      On or about October 11, 2010, SANCHEZ utilized a counterfeit driver's license with his wife's photograph but bearing "F.M.'s" personal identifiers as well as the Social Security number and date of birth of "F.M." on a loan application for an automobile loan obtained through Chase Bank Auto Finance, a federally insured financial institution.

3.      On or about December 21, 2010, SANCHEZ submitted documents to purchase a Nissan automobile in Austin, Texas using identifiers which did not belong to him, and obtained financing from Capital One using false identifiers including a Social Security number, date of birth, and name and address which did not belong to SANCHEZ.

4.      On or about July 15, 2011, SANCHEZ contacted University Federal Credit Union (UFCU) over the telephone to apply for a car loan for "J.E." SANCHEZ provided a false telephone number, a false address, and false employment information with inflated wages. SANCHEZ followed up the false information provided on the telephone with the presentation of false documents to include counterfeit earnings statements, a counterfeit insurance card, false references, and a falsely altered utility bill.

5.      On or about August 1, 2011, SANCHEZ contacted UFCU over the telephone to apply for a car loan for "A.G." SANCHEZ falsely represented himself to be "A.G." SANCHEZ provided a false address, a false term of employment, and a false telephone number. SANCHEZ also faxed false documents to UFCU, including a false insurance card.

6.      On or about August 2, 2011, SANCHEZ accompanied "A.G." to UFCU. SANCHEZ informed "A.G." to act like they were together as boyfriend-girlfriend.

7.      On or about November 15, 2011, SANCHEZ contacted TruWest Credit Union to obtain an auto loan for "J.S." through the use of false information. SANCHEZ provided a false address, a

false insurance liability card, two counterfeit earnings statements which reflected inflated income amounts, and a false utility bill for proof of residence.

8. On or about November 17, 2011, SANCHEZ accompanied "J.S." to TruWest Credit Union to close on the auto loan initiated through false information on or about November 15, 2011.

9. On or about November 22, 2011, SANCHEZ began the auto loan process for "P.S." using a variation of her name. SANCHEZ provided false information to Randolph-Brooks Federal Credit Union (RBFCU), including a false address, false gross monthly income, and a false telephone number.

10. On or about November 23, 2011, SANCHEZ provided counterfeit earnings statements for "P.S." using the variation of her name, a counterfeit Geico insurance card and a counterfeit tax form with inflated wages to assist in qualifying for the car loan with RBFCU.

11. On or about November 26, 2011, SANCHEZ and "P.S." went to RBFCU to close on the auto loan obtained through false information.

12. On or about December 14, 2011, SANCHEZ began providing false identifying information for "S.O." over the TruWest Credit Union web site to obtain a car loan.

13. On or about December 15, 2011, SANCHEZ provided counterfeit earnings statement to TruWest Credit Union for "S.O.'s" car loan.

14. On or about December 16, 2011, SANCHEZ went to the TruWest Credit Union with "S.O." to close an auto loan in the approximate amount of $18,869.32. SANCHEZ represented that he was the boyfriend of "S.O." SANCHEZ, aided and abetted by others, provided false information on the loan documents, including falsified employment history and personal identifiers. SANCHEZ also

provided a counterfeit car insurance card. SANCHEZ accompanied "S.O." to Signature Leasing to pick up the vehicle.

15. On or about January 5, 2012, SANCHEZ contacted Velocity Credit Union over the telephone to begin the loan application process to obtain a car for SANCHEZ. SANCHEZ provided false information, including a false Social Security number, a false address, a false date of birth, as well as false employment and wage information. SANCHEZ faxed to Velocity Credit Union a counterfeit Social Security card, a counterfeit earnings statement, and a counterfeit insurance card.

16. On or about January 6, 2012, SANCHEZ closed on the automobile loan with Velocity Credit Union which was obtained with false information.

17. On or about February 22, 2012, SANCHEZ possessed a script for applying for an auto loan over the telephone from UFCU. In his script, SANCHEZ indicated that the applicant had heard great things about UFCU and was willing to switch their checking and savings from Chase to UFCU. SANCHEZ further represented in this script that the applicant's spouse had been working for 6 years at Dell, the applicant had worked for 9 years at their job, and had funds in their savings and 401k, but needed to try and make the auto loan work with no money down as the applicant preferred to not take that money out at the moment. In addition to this script, SANCHEZ possessed a counterfeit State Farm liability card, a counterfeit Texas Driver's License with SANCHEZ' photo but bearing a different name, bills placed in other individuals names, a computer containing photo images of multiple counterfeit Texas Driver's licenses, and a template for tax documents which could be used for falsely representing income on applications to obtain auto loans from financial institutions.

All in violation of Title 18, United States Code, Sections 1344 [Bank Fraud], and 2.

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

ROBERT PITMAN
United States Attorney

By: *[signature]*

ELIZABETH COTTINGHAM
Assistant U. S. Attorney